## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 CTG |
| | ) | |
| *Debtors*. | ) | (Jointly Administered) |

_____

| | | |
|---|---|---|
| | ) | |
| JEFF MOORE and ELIZABETH BROOKE | ) | Adversary Proceeding |
| MOORE and VIDAL TORRES on behalf of | ) | |
| themselves and all others similarly situated, | ) | Case No. 23-50457-CTG |
| | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| YELLOW CORPORATION, ET AL. | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

### DEBTORS' OPPOSITION TO PLAINTIFF'S MOTION FOR (A) CLASS CERTIFICATION, (B) APPOINTMENT OF CLASS REPRESENTATIVE, (C) APPOINTMENT OF CLASS COUNSEL, (D) APPROVAL OF THE FORM AND MANNER OF CLASS NOTICE, AND (E) SUCH OTHER AND FURTHER RELIEF AS THIS COURT MAY DEEM APPROPRIATE

The above-captioned debtors and debtors in possession (collectively, the "Debtors" or the

"Company") hereby submit this opposition to *Plaintiff's Motion for (A) Class Certification, (B)*

*Appointment of Class Representative, (C) Appointment of Class Counsel, (D) Approval of the*

*Form and Manner of Class Notice, and (E) Such Other and Further Relief as this Court may Deem*

*Appropriate* [ECF No. 13] (the "Motion for Class Certification").

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

INTRODUCTION ..........................................................................................................2

BACKGROUND ............................................................................................................4

    A.    The Circumstances Leading to the Debtors' Chapter 11 Cases.............................4

    B.    The WARN Cases Filed.................................................................................6

    C.    The Bar Date Motion, Order, and Solicitation.................................................8

    D.    The Proofs of Claim Filed...........................................................................11

    E.    The Class Certification Motion.....................................................................11

LEGAL STANDARD....................................................................................................12

ARGUMENT ..............................................................................................................12

    A.    The Court Should Deny the Motion for Class Certification because
Plaintiff Cannot Establish that a Class Action is Superior to Other
Available Methods of Adjudicating His Claims (FRCP23(b))............................12

    B.    The Court Should Deny the Motion for Class Certification Because the
Plan will Propose a Fair Resolution for Timely, Non-Released WARN
Claimants. .................................................................................................15

    C.    Certifying a Class Would Prejudice the Debtors And All Other Creditors. ..........16

    D.    The Claims Resolution Process Will Not Prejudice Anyone Because As-
Applied Analysis Remains Available For Anyone Who Missed the Bar
Date. ........................................................................................................19

    E.    If Any WARN-Related Class Were Appropriate, This One Is Not Because
The Sole Proposed Class Representative Already Released All Claims. ..............20

CONCLUSION............................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Bally Total Fitness of Greater N.Y., Inc.*,
    402 B.R. 616 (Bankr. S.D.N.Y. 2009) .............................................................................13, 18

*In re BellSouth Corp., ERISA Litig.*,
    No. 1:02-CV-2440-JOF, 2005 WL 8154294 (N.D. Ga. Sept. 30, 2005) ................................19

*Binford v. First Magnus Fin. Corp.* (*In re First Magnus Fin. Corp.*),
    403 B.R. 659 (D. Ariz. 2009) ...........................................................................................11, 13

*In re Blockbuster Inc.*,
    441 B.R. 239 (Bankr. S.D.N.Y. 2011) ...................................................................................13

*Brady v. AutoZone Stores, Inc.*,
    960 F.3d 1172 (9th Cir. 2020) ...............................................................................................19

*In re Connaught Grp., Ltd.*,
    491 B.R. 88 (Bankr. S.D.N.Y. 2013) .....................................................................................11

*In re Craft*,
    321 B.R. 189 (Bankr. N.D. Tex. 2005) ..................................................................................15

*Drake v. U.S. Enrichment Corp.*,
    63 F.Supp.3d 721 (W.D. Ky. 2014) ........................................................................................17

*In re Energy Future Holdings Corp.*,
    558 B.R. 684 (D. Del. 2016) ....................................................................................11, 13, 17

*In re Energy Future Holdings Corp.*,
    No. 14-10979-CSS (Bankr. D. Del. Dec. 16, 2015), ECF No. 7487 ......................................17

*In re Ephedra Prod. Liab. Litig.*,
    329 B.R. 1 (S.D.N.Y. 2005) ...................................................................................................13

*Hall v. Burger King Corp.*,
    No. 89-0260-CIV-KEHOE, 1992 WL 372354 (S.D. Fla. Oct. 26, 1992) ..............................19

*In re Jamesway Corp.*,
    1997 WL 327105 (Bankr. S.D.N.Y. June 12, 1997) ...............................................................15

*In re MF Global Inc.*,
    512 B.R. 757 (Bankr. S.D.N.Y., 2014) ..................................................................................12

*In re Musicland Holding Corporation*,
362 B.R. 644 (Bankr. S.D.N.Y. 2007) ..................................................................16

*Presser v. Key Food Stores Coop., Inc.*,
218 F.R.D. 53 (E.D.N.Y. 2003) ..........................................................................18

*In re Sacred Heart Hosp. of Norristown*,
177 B.R. 16 (Bankr. E.D. Pa. 1995) ....................................................................16

*In re Schering-Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) .................................................................................20

*Spann v. AOL Time Warner, Inc*.,
No. 02 Civ.8238 DLC, 2003 WL 23010137 (S.D.N.Y. Dec. 24, 2003) .................20

*In re TWL Corp.*,
712 F.Ed 886 (5th Cir. 2013) ........................................................................11, 12

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*,
517 U.S. 544 (1996) .......................................................................................... vi

*In re W.R. Grace & Co.*,
389 B.R. 373 (Bankr. D. Del. 2008) *reconsideration denied*, 2016 WL
4501942 (Bankr. D. Del. Aug. 25, 2016) .............................................................16

*In re Waindel*,
65 F.3d 1307 (5th Cir. 1995) ..............................................................................16

*Wilferth v. Faulkner*,
2006 WL 2913456 (N.D. Tex. Oct. 11, 2006) .......................................................16

*Wirth v. Telcordia Tech., Inc.*,
247 F. App'x 366 (3d Cir. 2007) .........................................................................17

*In re Woodmoor Corp.*,
4 B.R. 186 (Bankr. D. Colo. 1980) ......................................................................13

**Statutes**

*California Labor Code § 201 et seq. (7)* ....................................................................7

*California Labor Code § 1400 et seq.* ...................................................................6, 7

*North Carolina Wage and Hour Act § 95-25.1 et seq.* ..............................................7

*WARN Act, 29 U.S.C. § 2101, et seq.* ..................................................................6, 7

**Other Authorities**

Fed. R. Bankr. P. 2002 ................................................................................................................9

Fed. R. Bankr. P. 7023 ..............................................................................................................15

Fed. R. Bankr. P. 7033 ..............................................................................................................19

Fed. R. Bankr. P. 7034 ..............................................................................................................19

Fed. R. Bankr. P. 9014 ..............................................................................................................19

Fed. R. Civ. P. 23(a) ...........................................................................................................11, 19

Fed. R. Civ. P. 23(b) ....................................................................................................................2

Fed. R. Civ. P. 23(b)(3)....................................................................................................11, 12, 13

## **PRELIMINARY STATEMENT**

There is no reason to certify a class in this case. This Court already entered an Order setting a bar date for filing proofs of claim, Bankr. ECF 521, which passed on November 13, 2023. Approximately 1,000 timely individual proofs of claim were filed by former employees of the Debtors asserting Worker Adjustment and Retraining Notification ("WARN") Act claims. In addition, several unions, including the International Brotherhood of Teamsters (the "IBT"), filed WARN proofs of claim on behalf of their members. *See United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544 (1996).

Accordingly, the universe of potential WARN claims is already known, and it is limited to: (1) the individuals who personally filed claims before the bar date and did not release such claims before that date; and (2) the individuals whose collectively bargained union representatives filed claims on their behalf. There is no basis to circumvent the bar date (which *bars* claims from those individuals who did not timely act) through a belated class certification motion. And given the composition of the WARN claims that remain, there is no reason to believe that class action litigation (with its attendant costs and burdens) would be a more efficient way of resolving those claims than the claims resolution process provided in the Bankruptcy Code and Rules and implemented in the Bar Date Order. Most obviously, even if class action litigation *in general* could be helpful in these chapter 11 cases (it would not), there is no basis to permit a putative class action led by a single person (Mr. Torres) ***who already signed a release***. *See* Exhibit A.

For these reasons and others described below, the Motion for Class Certification should be denied.

1

## **INTRODUCTION**

A class action is not the superior method of resolving WARN Act issues for several basic reasons. First, a class action will not lead to an efficient resolution of claims, but rather place an undue and unnecessary cost on the Debtors' estates and creditors. While the Debtors do not believe they violated the WARN Act at all—the Debtors' collapse was an unforeseeable and immediate consequence of abhorrent behavior by the IBT, which caused the Debtors' quick demise[1] and prevented any additional notice—the Debtors intend to seek to resolve the claims of WARN Act claimants who submitted proofs of claim prior to bar date in a proposed Plan, facilitating a fair, efficient and comprehensive resolution. And no other claimant, including any others whose claims are barred but the class action lawyers pursuing this motion are trying to represent, has the legal right to assert a claim at all. Class certification at this point in the case only duplicates costs and effort already expended by the Debtors through the proofs of claim solicitation process. Indeed, the process worked—since this Court entered the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Bankr. ECF No. 521] (the "Bar Date Order") on September 13, 2023, the Debtors received over 1,000 proofs of claim that assert claims under the WARN Act. This is proof positive that the claims process is the superior method of resolving these claims.

---

[1]    *See* Bankruptcy ECF No. 14, *Declaration of Matt Doheny, Chief Restructuring Officer, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (filed August 7, 2023) (the "Doheny Decl."); *see also Yellow Corp. v. Int'l Brotherhood of Teamsters*, No. 23-cv-1131 (D. Kan.).

Even more clearly, class action litigation cannot be used to improperly revive individuals' claims that were not filed before the bar date and thus are barred by this Court's Bar Date Order. If individual claimants missed the bar date due to excusable neglect or were somehow not afforded the requisite due process, an as-applied analysis will remain available to address those claimants' arguments—but any such analysis would, by definition, be individualized.  Thus, no proposed class member is disadvantaged by allowing the claims adjudication process to govern WARN Act claims, reaffirming that the claims process is the superior method for resolving such claims.

Finally, even if *any* WARN class action made sense here, ***this*** proposed action does not. Plaintiffs identify one putative class representative, Vidal Torres, who worked in California for about 8 months.  But Mr. Torres has no claim at all.  On July 28, 2023, Mr. Torres executed a full release of all claims he may have against the Debtors in exchange for a severance payment, which he received and kept.  *See* Exhibit A.[2]  More than 2,800 other former employees did, too, and the number of employees who—(a) were not represented by a union; (b) did not (like Mr. Torres) release their claim; and (c) did not individually file a proof of claim—will be small.  Accordingly, this proposed class action makes no sense, and it is unlikely that any proposed class action would.

In sum, since Plaintiff cannot establish that the proposed class certification that he seeks meets the requirements of Federal Rule of Civil Procedure 23(b), the Motion for Class Certification must fail.

---

[2]    It is frankly remarkable that proposed class action counsel would file a proposed class action complaint without mentioning the fact that the only proposed class representative (Mr. Torres) signed a release and has no claim.  The Debtors reserve their rights to seek reimbursement of the costs and attorneys' fees spent on these actions to date from proposed class counsel.

## BACKGROUND

### A.    The Circumstances Leading to the Debtors' Chapter 11 Cases

1.    Prior to the Petition Date, the Debtors developed the One Yellow restructuring initiative, intended to modernize the business and upgrade the efficiency of its operations so that the company could continue to compete successfully.  *See* Doheny Decl. ¶¶ 1, 3.  One Yellow required execution in carefully planned phases.  *Id.* ¶ 3.  All of Company's stakeholders, including its employees, customers, creditors, and shareholders, knew and understood the criticality of the successful and timely implementation of each phase.  *Id.*  As a result, during the first phase of One Yellow, the Company and the IBT resolved the seniority and other issues associated with Phase 1, and the IBT, in the ordinary course, approved the implementation of Phase 1.  *Id.* ¶ 4.

2.    Despite proof of success with One Yellow—with a far more efficient and successful operation in the Company's western network—the IBT, under the new leadership of Sean O'Brien, ultimately pulled its support for the implementation of One Yellow.  *Id.* ¶ 5.

3.    O'Brien and the IBT's leadership were warned that obstructing One Yellow not only risked financially destroying the Company but also risked the jobs of the more than 22,000 employees the IBT purported to represent.  *Id.* ¶¶ 2, 5, 8.   And any decision by the IBT to refuse support for One Yellow would be irrational given the catastrophic impact such a decision would have on their own members.  Thus, to the Company, Mr. O'Brien's self-described "militant" line was believed to be simply part of the IBT's approach to gain leverage in negotiations.  *Id.* ¶¶ 8–9.

4.    But notwithstanding the information provided by the Company to the IBT, Mr. O'Brien took to social media and other public communications to conduct a public dressing down of the Company.  *Id.* ¶¶ 7–8.  Mr. O'Brien then caused the IBT to issue a 72-hour strike notice to the Company, effective July 24, 2023.  *Id.* ¶ 12.

5.      News of the IBT's strike threat spread like wildfire, garnering national news attention.  *Id*.  And the consequences of the IBT's public strike threat, coupled with the corrosive effect of Mr. O'Brien's negative messaging, were devastating.  When the strike was announced, the Company's individual shipments totaled approximately 40,000.  *Id*. ¶ 13.   But in a matter of days, the Company's business evaporated with the total number of individual shipments nearing zero.  *Id*.  When Mr. O'Brien realized the seismic risk to the business and consequences for job loss, the IBT called Central States and secured an agreement leading to a cancellation of the threatened strike.  *Id*. ¶ 15.  But the threat of strike had sealed the Company's fate.  *Id*. ¶¶ 14–15.  Irreversible damage had already been done. The Company's most loyal customers dropped the Company as a carrier and competitors immediately absorbed the Company's shipments.  *Id*. ¶ 13.  In the Company's liquidity-starved state—a byproduct of the hard driven negotiations to implement Phase 2 of One Yellow—any realistic prospect of obtaining out-of-court financing dried up.  *Id*.  Thus, on August 6, 2023, the Company was forced into filing these chapter 11 cases.

6.      To be clear, the Company's funded debt obligations did not cause the Debtors to commence their respective voluntary cases under chapter 11 of the Bankruptcy Code.  *Id*. ¶ 18.  Rather, with the Company's customers suddenly gone, the Company and its advisors determined that it was unlikely for the Company to obtain financing, let alone for the future of the Company to continue operating as a going-concern.  *Id*. ¶ 16.  Moreover, on July 19, 2023, Citizens Business Capital sent the Company a notice of establishment of availability reserve in the amount of $25 million, which came due July 21, 2023.  *Id*. ¶ 100.  On July 25, 2023, Citizens again sent a notice of establishment of availability reserve in the amount of $25 million, exacerbating the Company's rapidly deteriorating liquidity, which came due on July 27, 2023.  *Id*.

7.    Facing a dire liquidity shortfall, the Debtors had no choice but to clear the Company's freight network, close facilities, and commence layoffs of the workforce on July 28, 2023. *Id*. ¶ 104. This was not an outcome that anyone reasonably expected or desired. *Id*. ¶ 16. Nonetheless, the Company had no choice but to lay off approximately 3,500 non-union employees, many of who were offered and executed release agreements in consideration for severance payments from the now-Debtors. *Id*. ¶ 17. In addition, on July 30, 2023, the Company sent notice to the IBT and other Unions that it was laying-off approximately 22,000 Union employees. *Id*. In connection with both efforts, the Company sent WARN notices to affected employees. *Id*.

8.    All told, more than 2,800 former Yellow employees accepted severance payments in exchange for releasing the Debtors from all claims. The severance amounts offered varied depending on the employee's tenure with the Company. One of the former employees who was made a severance offer and who accepted was Vidal Torres, who executed a General Release of Claims on July 28, 2023. *See* Exhibit A. Mr. Torres, among other things, explicitly released all claims that might arise out of the WARN Act and promised to "refrain from filing any lawsuits or other proceedings alleging claims that are released by this Release." *See id.* at 1-2.

**B.    The WARN Cases Filed**

9.    The irreversible collapse in negotiations and the decisive market response to the IBT's threatened strike announcement caused the Debtors to implement an immediate, full-scale winddown of the business. Without the capital, or even the prospect of obtaining financing, to extend their runway, the Debtors were forced to begin the process of shutting its doors and sending employees home indefinitely. *Id*. ¶ 17.

10.    The abrupt end to a nearly century-old storied American icon was, needless to say, unplanned. *Id*. ¶ 1. The layoffs stemmed from events that transpired in a matter of days.

6

11.     Nevertheless, on August 7, 2023, three separate class action adversary proceeding complaints were filed with the bankruptcy court against the Debtors for "failure to provide its works [sic] with the 60-day advance notice required under the federal Worker Adjustment and Retraining Notification Act (the 'WARN Act')."  *Class Action Adversary Proceeding Complaint by Roger Keef Against Yellow Corporation* [Bankr. ECF No. 47] ("<u>Keef Compl.</u>") ¶ 1; *see also Complaint by Elizabeth Brooke Moore, Jeff Moore Against Yellow Freight Corporation, et al.* [Bankr. ECF No. 25] ("<u>Moore Compl.</u>") ¶ 3; *Class Action Adversary Proceeding Complaint for (1) Violation of WARN Act 29 U.S.C. § 2101, et seq.; (2) Violation of New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act; (3) Violation of California Labor Code §§ 1400 et seq. and (4) Violation of New York WARN Act, NYLL § 860, et seq* [Bankr. ECF No. 21] ("<u>Rivera Compl.</u>") ¶ 1.  All three complaints purported to bring claims for relief for violation of 29 U.S.C. § 2101 *et seq.*, individually and on behalf of all other similarly situated former employees.  *See* Keef Compl. ¶ 31; Moore Compl. at ¶ 26; Rivera Compl. ¶ 70.  Two of the three complaints filed on August 7, 2023, brought state WARN Act claims, too.  *See* Keef Compl. ¶¶ 42–53 (alleging violations of the Illinois WARN Act); Rivera Compl. ¶¶ 92–111 (alleging violations of the New Jersey, California and New York WARN Acts).

12.     On September 18, 2023, the Rivera WARN action plaintiffs filed a first amended complaint that added several new plaintiffs and a new defendant.  [*Rivera* ECF No. 7].

13.     On November 9, 2023, the Debtors answered the three WARN complaints.  The very next day, on November 10, 2023, the above-captioned Plaintiffs filed their First Amended Complaint, improperly without seeking leave of the Court, which added Torres as a Plaintiff, and brought a second claim for relief under the California WARN Act.  [*Moore* ECF No. 12].

14.    On November 13, 2023, a fourth class action adversary complaint alleging violation of 29 U.S.C. § 2101 *et seq.* was filed.  *Class Action Adversary Complaint for (1) Violation of Federal Warn Act 29 U.S.C. § 2101 et seq., (2) Breach of Contract, (3) Unjust Enrichment, (4) Declaratory Relief, (5) Violation of California Labor Code §1400 et seq., (6) Violation of California Labor Code § 201 et seq., (7) Violation of North Carolina Wage and Hour Act §§ 95-25.1 et seq., (8) Violation of New York WARN Act, NYLL § 860 et seq., and (9) Violation of New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act* [Bankr. ECF No. 1126] (the "Coughlen Compl.").  Although the Coughlen Complaint has not been served yet, it too brings state law claims.  *See* Coughlen Compl. at ¶¶ 62–107.

15.    On December 15, 2023, the *Moore* Plaintiffs filed a motion seeking leave to amend their complaint, attempting to merge the *Moore* and *Rivera* matters.  [*Moore* ECF No. 19].  Although Plaintiffs had previously committed to amending their Motion for Class Certification at the same time, *see Moore* ECF No. 16, they did not—in an obvious effort to jam the Debtors with an immediate response deadline.  Nevertheless, these efforts appear designed to circumvent the solicitation and claims process that the Court has already approved and has already been executed.

## C.    The Bar Date Motion, Order, and Solicitation

16.    Three-and-a-half weeks after the first three WARN actions were filed against the Debtors, August 31, 2023, the Debtors filed a motion to establish a claims adjudication process. *See Motion of Debtors Seeking Entry of an Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof Filed by Yellow Corporation* [Bankr. ECF No. 393] (the "Bar Date Motion").

17. Two weeks later, the Court granted the Debtors' Motion. *See* Bar Date Order ¶ 1. The Court ordered that anyone "that asserts a claim against the Debtors that arose before the Petition Date shall be required to file an original, proof of claim." *Id.* ¶ 3. Claimants were instructed to file their proofs of claim on or before November 13, 2023. *Id.* ¶ 3(a). And claimants were clearly warned of the consequences if they did not timely file a proof of claim:

### VIII. Consequences of Failure to File a Proof of Claim

16. Any entity who is required, but fails, to file a proof of claim pursuant to the Bar Date Order on or before the applicable Bar Date shall be prohibited from voting to accept or reject any chapter 11 plan filed in these chapter 11 cases, participating in any distribution in these chapter 11 cases on account of such claim, and will not receive further notices regarding such claim.

*Id.* ¶ 16.

18. On September 13, 2023, the Debtors commenced solicitation. As required by the Bar Date Order, the Debtors mailed the Bar Date Notice[3] and Proof of Claim Form to:

   a) the U.S. Trustee;

   b) the holders of the thirty largest unsecured claims against the Debtors;

   c) counsel to the Committee;

   d) counsel to the Junior DIP Lender, Junior DIP Agent, B-2 Lenders, B-2 Agent, and Prepetition ABL Agent, as well as counsel to the administrative and collateral agents under the UST Credit Agreements;

   e) the United States Department of Justice;

   f) counsel to the United States Department of the Treasury;

   g) all creditors and other known holders of claims against the Debtors as of the date of entry of the Bar Date Order, including all entities listed in the Schedules as holding claims against the Debtors;

---

[3] Capitalized terms not defined herein are defined in the Bar Date Order.

h)  all entities that have requested notice of the proceedings in these chapter 11 cases pursuant to Bankruptcy Rule 2002 as of the date of the Bar Date Order;

i)  all entities that have filed proofs of claim in these chapter 11 cases as of the date of the Bar Date Order;

j)  all known non-Debtor equity and interest holders of the Debtors as of the date of the Bar Date Order;

k)  all entities that are party to executory contracts and unexpired leases;

l)  all entities that are party to litigation with the Debtors;

m) all current employees and former employees who were employed by the Debtors in the 24 months prior to the Petition Date (to the extent that contact information for such former employees is available in the Debtors' records);

n)  the U.S. Attorney's Office for the District of Delaware;

o)  the office of the attorney general for each state in which the Debtors maintain or conduct business;

p)  the Internal Revenue Service;

q)  all other taxing authorities for the jurisdictions in which the Debtors maintain or conduct business; and

r)  the U.S. Securities and Exchange Commission.

*Id.* ¶ 10.

19.     Furthermore, to the extent possible, the Debtors provided all known creditors listed in the Debtors' Schedules with a "personalized" Proof of Claim Form, which identified how the Debtors had scheduled the creditors' claim, including, without limitation: (a) the identity of the Debtor against which the creditor's claim is scheduled; (b) the amount of the scheduled claim, if any; (c) whether the claim is listed as contingent, unliquidated, or disputed; and (d) whether the claim is listed as secured, unsecured priority, or unsecured non-priority.  *Id.* ¶ 11.

20.     Finally, Debtors published notice in *USA Today* and *Transport Topics*.  *Id.* ¶ 14.

**D.**    **The Proofs of Claim Filed**

21.    As a result of this extensive solicitation process, by November 14, 2023, the day after the bar date, various claimants had filed more than 1000 WARN-related proofs of claim.  Of the total WARN claims filed with the Court, over a thousand were submitted by individual former employees and 46 were submitted by unions.[4]

22.    The total number of WARN-related proofs of claim filed is somewhat misleading, however.  Approximately 3,300 non-union employees were laid off by the Debtors shortly before the Petition Date.  Of that sum, approximately 2,800 of them (including Mr. Torres) executed General Releases in which they released all such claims (including WARN claims) in exchange for severance, which was paid.  *See* Exhibit A.

23.    Accordingly, while the Debtors are still reconciling the claims pool, the universe of people who—(a) were not represented by unions; (b) filed a proof of claim before the November 13, 2023 Bar Date and thus have a claim that is not barred; and (c) did not already release their claim—is likely reasonable, and can easily be accommodated through the claims process.  And, in any event, the sole claimant seeking to represent a class of former non-union employees of the Debtors, Mr. Torres, has no claim.

**E.**    **The Class Certification Motion**

24.    On November 13, 2023 (the same date as the Bar Date) Plaintiff Torres filed his Motion for Class Certification.  [*Moore* ECF No. 12].  The Motion for Class Certification proposes a class comprised of Mr. Torres "and all former non-bargaining unit employees of one or more of the Defendants . . ."  [*Moore* ECF No. 13-2 at 6].

---

[4]    These numbers are preliminary and the Debtors are working to reconcile the filed Proofs of Claim.  The Debtors will file a declaration verifying these details regarding the claims pool, specific to asserted WARN claims, as well as the number of releases signed, in advance of the hearing on the Class Certification Motion.

**LEGAL STANDARD**

25.    In addition to meeting the requirements of FRCP 23(a), a plaintiff must also demonstrate, under FRCP 23(b)(3), "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The superiority consideration requires a court to compare the proposed class "to other available methods for fairly and efficiently adjudicating the controversy."  *See In re Energy Future Holdings Corp.*, 558 B.R. 684, 688 (D. Del. 2016).

**ARGUMENT**

A.    **The Court Should Deny the Motion for Class Certification because Plaintiff Cannot Establish that a Class Action is Superior to Other Available Methods of Adjudicating His Claims (FRCP23(b)).**

26.    As set forth in detail above, there is a clear alternative method of adjudicating WARN Act claims: the claims resolution process.  *See e.g., In re Connaught Grp., Ltd.*, 491 B.R. 88, 96 (Bankr. S.D.N.Y. 2013) ("[T]he superiority inquiry under Rule 23(b)(3) essentially comes down to whether the class action is superior to the bankruptcy claims resolution process.").

27.    Plaintiff completely fails to establish that a class action is superior to the claims resolution process.  Indeed, the only argument Plaintiff made as to why a class action is allegedly the superior method of resolving this dispute is "because many of the claims are quite small, making individual lawsuits impracticable."  [*Moore* ECF No. 13-2 at 12].  Plaintiff does not even address whether the claims resolution process, as opposed to a class action or individual lawsuits, may be the superior method for resolving WARN Act claims.

28.    The claims resolution process is superior to a class action here for many reasons.  ***First***, the claims process is far, far less costly than a class action.  As the Fifth Circuit noted in *In re TWL Corp.*:

Within a bankruptcy case, a leading authority suggests that the superiority inquiry assumes added import: "Comparison should be made with respect to the requirements of treating the action as a class suit with the advantages and disadvantages that could result from prosecution of the claims by other means, especially in the bankruptcy context." 10 Collier on Bankruptcy ¶ 7023.03[3]. For this reason, it is notable that certain bankruptcy-related factors—including "whether class certification will adversely affect the administration of the case"—are "relevant to, and have been considered in the determination of, whether the requirements of Rule 23 have been met." *Id.* ¶ 7023.01. In *Computer Learning Centers*, for example, the court concluded that, in that case, a class action was not superior "to the ordinary operation of [the related] bankruptcy case." 344 B.R. at 92 (addressing a class proof of claim). In our view, a bankruptcy court should consider the cost to the debtor's estate of a class adversary proceeding simply because ***the expense of adjudicating the controversy via a class action depletes the debtor's assets, which in turn diminishes the funding available to creditors, including, possibly, the very claimants pursuing the class action***. Such a consideration is particularly relevant . . . [where debtor has] insufficient assets to pay existing creditors. As a corollary, we also conclude that a bankruptcy court should consider the availability and ease of the proof of claim process when determining whether a class adversary proceeding is a superior method for fairly and efficiently adjudicating a controversy.

712 F.3d 886, 896-97 (5th Cir. 2013) (emphasis added). In addition to the sheer expense of litigating a class action, which would diminish the funds available to creditors (including former employees), to the extent a class is formed, counsel for the putative class will seek a significant percentage of any damages awarded to the proposed class, which (if allowed) would dilute creditors' potential recovery—demonstrating that the claims process is superior.[5]

---

[5]    *Cf. In re MF Global Inc.*, 512 B.R. 757, 768 (Bankr. S.D.N.Y., 2014) (finding allowance of claim to proceed as a class claim would not be unfairly prejudicial, but only because class counsel waived any compensation for services in connection with the claim). Comparably, the bankruptcy court in *MF Global* allowed a chapter 11 debtor's former employees to pursue claims as a class for accrued, but unpaid, vacation time. *Id.* at 768. While recognizing that, in bankruptcy, "class claims should be used sparingly," the bankruptcy court reasoned the class claim was superior to other available methods there, as (1) the trustee had conceded liability and (2) counsel for the class claimants represented they would not seek any compensation in connection with the claim. *Id.* at 767-68. Accordingly, *MF Global* is distinguishable from the matter at bar, as no liability has been conceded and the estate will be burdened significantly, at the cost of both creditors and employees, for the sole benefit of class counsel—who has not offered to waive compensation in connection with Plaintiffs' WARN claims.

29. ***Second***, the claims resolution process is far more typical in bankruptcy than is following the class action rules. Indeed, reconciling large volumes of claims is what bankruptcy courts do, and the Bankruptcy Rules allow an efficient claim reconciliation process. *See Binford v. First Magnus Fin. Corp.* (*In re First Magnus Fin. Corp.*), 403 B.R. 659, 663-64 (D. Ariz. 2009) (affirming the dismissal of a WARN Act adversary proceeding with a putative class of over 5,000 members because "the normal bankruptcy claims procedure was adequate to handle the claims"); *In re Woodmoor Corp.*, 4 B.R. 186, 189 (Bankr. D. Colo. 1980) (concluding proofs of claims of putative class of approximately 900 members, which were then pending before the court, could "be conveniently and expeditiously managed by following normal bankruptcy procedures").

30. For these two reasons alone, the claims process is a better use of estate resources than resolving this through class action, affording fair and efficient adjudication of the controversy. *See In re Energy Future Holdings*, 558 B.R. at 688. Plaintiff has failed to establish that a class action is superior to the bankruptcy claims resolution process and have not met their burden under Federal Rule 23(b)(3). *See In re Ephedra Prod. Liab. Litig.,* 329 B.R. 1, 9 (S.D.N.Y. 2005) ("superiority of the class action vanishes when the 'other available method' is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost."); *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 621-22 (Bankr. S.D.N.Y. 2009) ("Though class treatment may be beneficial with other civil actions in consolidating the adjudication of common issues, this advantage disappears in the context of a bankruptcy."); *In re Blockbuster Inc.*, 441 B.R. 239, 242 (Bankr. S.D.N.Y. 2011) (finding superiority not established where "potential class members had the opportunity to, and the Movants indeed did, file individual proofs of claim in the bankruptcy proceeding to be efficiently administered in accordance with the Bankruptcy Code").

31.     These realities are even clearer under the facts of this particular Chapter 11 case. Again, as stated above, approximately 3,500 non-union employees were permanently laid off shortly before these chapter 11 cases.  Of those individuals, approximately 2,800 already settled and waived all claims (including WARN claims) against the Debtors in exchange for severance payments that have already been made.  And over 1,000 individual Proofs of Claim were filed claiming WARN—likely by some employees that are among the population who already waived their claims and received severance as a result.  Given these statistics, there is no reason to that a class action is necessary, and very little reason to believe a class action would assist these Chapter 11 cases, or any potential class member, in any way.

**B.      The Court Should Deny the Motion for Class Certification Because the Plan will Propose a Fair Resolution for Timely, Non-Released WARN Claimants.**

32.     While the Court need not look any further than the cost and efficiency benefits listed in Section A above, a ***third*** reason a class action is not the superior method for adjudicating this dispute is because the Debtors intend to ultimately propose a Plan that will include proposed treatment for WARN Act claimants who submitted proofs of claim prior to the bar date and had not already released their claims—facilitating an efficient, fair, comprehensive resolution of all WARN Act-related claims.  While the Debtors are still working on their proposed plan, they expect that it will provide a far superior result for creditors than would litigation of these WARN claims.

33.     Resolution through the Plan process would also benefit the former employees who preserved their claims as required by the Bar Date Order because: (i) the costs saved from avoiding a class action would permit the Debtors to enhance recoveries for all stakeholders; and (ii) all WARN Act claimants who did not release their claims and submitted proofs of claim prior to bar date will be proposed to receive a recovery, rather than having to gamble with a lawsuit in which the Debtors believe the individuals would ultimately receive nothing.

34.    The bottom line is that the members of the putative class whose claims are not barred by the Bar Date Order will fare better, and will receive a better recovery, *without* a class action.  All certifying a class would do is skyrocket the costs of the Debtors.[6]  It is clear that a class action is not the superior method for adjudicating this dispute.

C.    **Certifying a Class Would Prejudice the Debtors And All Other Creditors.**

35.    ***Fourth***, perhaps most importantly, the fact that former employees of the Debtors filed over 1,000 WARN Act-related proofs of claim is ample evidence that the notice procedures contained in the Bar Date Order were robust and that class certification is not necessary or appropriate here.  There is simply no need to "protect" the rights of putative class members who received actual notice from Debtors and who had actual or constructive notice of the Bar Date but still failed to timely file proofs of claim.  *See, e.g., In re Jamesway Corp.*, 1997 WL 327105, at *10 (Bankr. S.D.N.Y. June 12, 1997) (denying class certification because it would "effectively extend the bar date to those employees who have not timely filed WARN Act claims herein, or moved to extend their time to file them, without a showing of excusable neglect.").

36.    Indeed, for that reason, the Debtors and all of their other creditors would suffer substantial prejudice if class certification is granted.  Granting class certification would offer individuals who failed to file proofs of claim by the bar date an inappropriate end-run around the Bar Date Order, undermining the very purpose of the bar date.  *See, e.g., In re Craft*, 321 B.R. 189, 199 (Bankr. N.D. Tex. 2005) (declining to make Bankruptcy Rule 7023 applicable to certify class proof of claim because it "would prejudice [debtor] and its creditors to delay the plan process and claim objection process").

---

[6]    As another example, class certification requires notice to all putative class members.  But the Debtors already spent a massive amount of money providing notice to all potential class members, consistent with the Bar Date Order.  Even though class counsel say that they would bear the initial cost of additional notice as a "cost of litigation," they would inevitably then try to shift that cost back to the Debtors (and ultimately to creditors).

37.     Bar dates are critical to the chapter 11 process.  They "promote a policy of administrative efficiency and practicality that would be upset if they were not enforced."  *In re Waindel*, 65 F.3d 1307, 1314 (5th Cir. 1995).  Bar dates "are critical to the prompt resolution of bankruptcy cases because they enable a debtor and creditor to know, reasonably promptly, each claim and the amount that is being asserted against the estate," and "must be strictly observed." *Wilferth v. Faulkner*, 2006 WL 2913456, at *5 (N.D. Tex. Oct. 11, 2006).  Certifying a class here would undermine the finality of the bar date by affording "certain claimants with the opportunity to file late claims despite the bar date and without having to establish excusable neglect . . . and would nullify the notice program which entailed substantial effort and expense." *In re W.R. Grace & Co.*, 389 B.R. 373, 379 (Bankr. D. Del. 2008) *reconsideration denied*, 2016 WL 4501942 (Bankr. D. Del. Aug. 25, 2016).

38.     In other words, there is no "class action" exception to a bar date.  Class certification based on an untimely motion not even filed until the Bar Date would "effect[] another end[-]run around the bar date" and "adversely affect the bankruptcy proceedings by permitting those who missed the bar date and who received at least publication notice to interpose claims into this case." *Id.* at 380 (denying motion for class certification); *see also, e.g., In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22–23 (Bankr. E.D. Pa. 1995) (refusing to certify class that would effectively "expand[] the bar date for notified creditors," where "putative unnamed class members have clearly received actual or constructive notice of the bankruptcy case and the bar date"); *In re Musicland Holding Corporation*, 362 B.R. 644, at 655 (Bankr. S.D.N.Y. 2007) ("putative members of an uncertified class who received actual notice of the bar date but did not file timely claims are the least favored candidates for class action treatment").

39.     Indeed, another Bankruptcy Court in this district rejected a parallel attempt to certify a class proof of claim as a collateral attack on that Court's bar date.  *See* Hearing Transcript, *In re Energy Future Holdings Corp.*, No. 14-10979-CSS (Bankr. D. Del. Dec. 16, 2015), ECF No. 7487, attached as <u>Exhibit B</u>.  At a hearing on the motion to certify a class "solely for purposes of filing a proof of claim," Judge Sontchi reasoned that "to allow that would be in effect a collateral attack on what this Court has already done, which is set a bar date as required by the bankruptcy rules . . . and establishing and approving an elaborate noticing procedure that cost several million dollars designed to provide a notice as adequately as possible to as many claimants as possible." *Id.* at 83:11-21.  Judge Sontchi recognized, as the Court should here, that if it "were to allow a class to file this class proof of claim . . . the whole point of the bar date goes away because everybody's covered," and that the "reality is bar dates are how you operate bankruptcy cases, and they're required by the rules, and they have legal significance, both for reorganizing the estate and for dealing with the claims vs. assets distribution of value." *Id*. at 84:13-20.[7]

40.     As described above, in addition to publishing notice, the Debtors mailed the Bar Date Notice and the Proof of Claim Form to thousands of people, including everyone employed by the Debtors in the 24 months prior to the Petition Date.  That anyone who did not file a timely proof of claim would need to prove excusable neglect to proceed should preclude class treatment.[8]

---

[7]     *See In re Energy Future Holdings Corp*., 558 B.R. 684, 687-90 (D. Del. 2016) (holding bankruptcy court, in denying class certification in chapter 11 case, did not abuse its discretion, regardless of whether there were thousands of currently unmanifested claimants, as bankruptcy court considered individual litigation in comparison to the proposed class proof of claim, noted elaborate notice procedure had already been established, and appreciated how allowing a class proof of claim on behalf of unmanifested claimants would equate to an end-run around the bar date.).

[8]     It should also be noted that individualized inquiries would also be necessary to identify and exclude (i) bargaining unit employees, given that such employees are excluded from the proposed class; and (ii) individuals who signed release agreements, given that at the time of termination, approximately 2,800 employees executed release agreements, waiving claims under the WARN Act, in consideration for severance payments.  *Wirth v. Telcordia Tech., Inc.*, 247 F. App'x 366, 370 (3d Cir. 2007); *Drake v. U.S. Enrichment Corp*., 63 F.Supp.3d 721, 724-25 (W.D. Ky. 2014) (finding salaried employees' WARN Act claims barred by severance agreement and general release executed at time of termination); *Presser v. Key Food Stores Coop., Inc.*, 218 F.R.D. 53, 59 (E.D.N.Y. 2003) (finding plaintiff could not adequately represent interests of class members who signed releases of WARN Act claims against defendant).

41.     Courts routinely rely on the robust protections of the Bankruptcy Code and notice provided in the claims process to prevent would-be class claimants from circumventing bar dates. This is because "[b]ankruptcy provides the same procedural advantages as a class action.  In fact, it provides more advantages."  *Bally Total Fitness*, 402 B.R. at 621 (denying class claim because class was not certified prepetition and all had notice of bar date).  As one bankruptcy court explained, "class status is unnecessary to protect the rights of the various members of the putative class; their rights are amply protected by the chapter 11 claims process itself."  *Id*. at 621.

**D.      The Claims Resolution Process Will Not Prejudice Anyone Because As-Applied Analysis Remains Available For Anyone Who Missed the Bar Date.**

42.     ***Fifth***, while the Debtors furnished comprehensive notice consistent with the Bar Date Order and have no reason to believe there are former employees who failed to receive actual notice of the Bar Date, if claimants missed the bar date due to excusable neglect or they were somehow not afforded due process, an as-applied analysis will remain available to those claimants. Ex. B at 86:12–13 (noting "[t]he issue of whether that due process as applied is sufficient to individual claimants is fully preserved.").  Thus, no proposed class member is disadvantaged by allowing the claims adjudication process to govern WARN Act claims.

43.     Indeed, granting the Motion for Class Certification would require more money to be spent on duplicative notice for no reason.  The Motion asks the Court to approve a form of class notice to be provided to thousands of people.  [*Moore* ECF No. 13-2 at 14–15].  But those same people already received notice of the Bar Date pursuant to the Bar Date Order, and if they had any desire to pursue a claim (WARN Act or otherwise), they could (and many did) file that claim.  It would make no sense to impose this additional burden on (which class counsel would inevitably try to shift to the estates) merely because class action attorneys want an additional notice be sent so that untimely additional claims could be filed.

44.     Given that no one will be disadvantaged by the claims process, and that utilizing the claims process will prevent the further exhaustion of Debtors' estates, averting the unreasonable wasting of estate assts and delay in resolving general estate claims, the claims process is yet again clearly the superior method for resolving this dispute.[9]

### E.     If Any WARN-Related Class Were Appropriate, This One Is Not Because The Sole Proposed Class Representative Already Released All Claims.

45.     *Finally*, it goes without saying that a class action whose only putative class representative has released all claims (including the claim he wants to assert) cannot stand. Accordingly, the fact that Mr. Torres has signed a General Release and received consideration for it (Ex. A) bars this action from proceeding as a class even if it otherwise made sense (it does not). *See, e.g., Brady v. AutoZone Stores, Inc.*, 960 F.3d 1172, 1175 (9th Cir. 2020) (dismissing appeal of denial of class certification as moot where class representative's claim was settled because "a class representative's voluntary settlement of individual claims renders class claims moot"). A release executed by a class representative defeats the typicality and adequacy requirements of Rule 23(a). *See, e.g., Hall v. Burger King Corp.*, No. 89-0260-CIV-KEHOE, 1992 WL 372354, at *8 (S.D. Fla. Oct. 26, 1992) (existence of releases further precluded typicality because each plaintiff would necessarily need to address the unique questions pertaining to the validity of those releases); *In re BellSouth Corp., ERISA Litig.*, No. 1:02-CV-2440-JOF, 2005 WL 8154294, at *9 (N.D. Ga. Sept. 30, 2005) ("the Named Plaintiffs who signed such releases clearly cannot bring claims on behalf of the class with the same vigor and interest as someone who had not signed such releases"; denying certification of ERISA misrepresentation and disclosure claims); *In re Schering-Plough Corp. ERISA Litig.*, 589 F.3d 585, 599-600 (3d Cir. 2009); *Spann v. AOL Time Warner, Inc.*, No.

---

[9]     The Debtors are initiating discovery related to the Class Certification Motion now that the filing of this Opposition brief creates a contested matter.  *See* Fed. R. Bankr. P. 9014, 7033, 7034.

02 Civ.8238 DLC, 2003 WL 23010137, at *9-11 (S.D.N.Y. Dec. 24, 2003) (releases negated typicality and required individualized, fact-specific inquiries into the circumstances surrounding each release).

46.    Indeed, the Third Circuit reversed a trial court's order granting class certification where the class representative had signed a release, and remanded the case so that the trial court could conduct a more "rigorous analysis" of the issue. *Schering-Plough Corp*, 589 F.3d at 591. The *Schering-Plough* Court explained:

> As a result [of the release signed by lead plaintiff], she may be subject to unique defenses that could become a focus of the litigation, rendering her atypical and making class certification inappropriate. For instance, ... it could be argued that the covenant not to sue bars [plaintiff] from filing a lawsuit and serving as a lead plaintiff ... Second, it could be argued that because of this release and covenant not to sue, [plaintiff's] interests and incentives may not be sufficiently aligned with those of the class. Given her release, [plaintiff] may not have a monetary stake in the outcome....

*Id*. at 599-600.  So too here.

47.    In short, even if class action litigation *in general* could be helpful in these chapter 11 cases (it would not), there is no basis to permit a putative class action led by a single person (Mr. Torres) **who already signed a release**.

## **CONCLUSION**

For the reasons set forth herein, Debtors respectfully request that the Court deny the Motion for Class Certification and grant the Debtors such other and further relief as is just and proper.

Dated:  December 18, 2023
Wilmington, Delaware

*/s/ Laura Davis Jones*

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:        ljones@pszjlaw.com
              tcairns@pszjlaw.com
              pkeane@pszjlaw.com
              ecorma@pszjlaw.com

-and-

Patrick J. Nash, P.C. (admitted *pro hac vice*)
David Seligman, P.C. (admitted *pro hac vice*)
Michael B. Slade (admitted *pro hac vice*)
Whitney Fogelberg (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        patrick.nash@kirkland.com
              david.seligman@kirkland.com
              michael.slade@kirkland.com
              whitney.fogelberg@kirkland.com

-and-

Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        allyson.smith@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*