```
                                                                   1

                     UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE


  IN RE:                        .  Chapter 11
                                .  Case No. 23-11069 (CTG)
  YELLOW CORPORATION,           .
  et al.,                       .  (Jointly Administered)
                                .
           Debtors.             .
  . . . . . . . . . . . . . . . .
                                .
  JEFF MOORE, ELIZABETH         .  Adversary Proceeding
  BROOKE MOORE, and VIDAL       .  No. 23-50457 (CTG)
  TORRES on behalf of           .
  themselves and all others     .
  similarly situated,           .
                                .
           Plaintiffs,          .
                                .
       v.                       .
                                .
  YELLOW CORPORATION,           .
  et al.,                       .
                                .
           Defendants.          .
  . . . . . . . . . . . . . . . .
                                .
  WILLIAM G. COUGHLEN,          .  Adversary Proceeding
  et al.,                       .  No. 23-50761 (CTG)
                                .
           Plaintiffs,          .
                                .
       v.                       .
                                .
  YELLOW CORPORATTION,          .  Courtroom No. 7
  et al.,                       .  824 Market Street
                                .  Wilmington, Delaware 19801
           Defendants.          .
                                .  Monday, October 28, 2024
  . . . . . . . . . . . . . . . .  10:00 a.m.


                  TRANSCRIPT OF ZOOM HEARING
              BEFORE THE HONORABLE CRAIG T. GOLDBLATT
                   UNITED STATES BANKRUPTCY JUDGE
```

1  on file does preserve all claims, not just preference, but
2  all claims related to the transfers on account of the
3  severance payments --
4           THE COURT:  All right, but can we --
5           MR. ESSER:  -- for folks that did not --
6           THE COURT:  -- can we just talk about this for a
7  second?  So, to make sure I've got the factual sequence
8  right, it's true that the payments -- the cash was in the
9  employees' accounts before anyone asked them for a -- to sign
10 a release?
11          MR. ESSER:  Case by case.  So, Oracle notices go
12 out, folks are let go.  The Oracle process takes a couple
13 days.  So, between the date folks get access to the Oracle
14 agreement and the petition date, there are some folks that --
15 there are folks that sign --
16          THE COURT:  You have people --
17          MR. ESSER:  -- and there are folks that don't
18 sign.
19          THE COURT:  -- who sign before --
20          MR. ESSER:  Right.
21          THE COURT:  -- and some people who sign after?
22          MR. ESSER:  And so at some point in that window
23 the decision was made to say we're about to -- we're going to
24 file, we need to pay these folks, we're going to --
25          THE COURT:  And so you --

1            MR. ESSER:  -- rely on them to --
2            THE COURT:  -- so you decide --
3            MR. ESSER:  -- sign the agreements --
4            THE COURT:  -- you decide you're cutting a check
5    to everybody.
6            MR. ESSER:  Correct.
7            THE COURT:  And then -- and at some point along
8    the way you say to people, sign this release, it's your
9    receipt of -- the severance is contingent on your signing or
10   something to that effect?
11           MR. ESSER:  I believe the communication is first.
12   So it's, sign this release, your -- our receipt of that
13   release is -- is --
14           THE COURT:  I see.
15           MR. ESSER:  -- is what we need --
16           THE COURT:  And then you decide --
17           MR. ESSER:  -- and then --
18           THE COURT:  -- as a practical matter, life is too
19   short to let this play out the normal way --
20           MR. ESSER:  Correct.
21           THE COURT:  -- we're about to go into bankruptcy,
22   let's just get the cash out the door and we'll deal with it
23   later.
24           MR. ESSER:  Correct.  And there were already --
25   there were -- people were signing --

1      THE COURT:  Some have come in --

2      MR. ESSER:  -- people were signing --

3      THE COURT:  -- and some haven't --

4      MR. ESSER:  -- so it was in reliance on folks are
5 going to keep signing, we've got to get folks paid --

6      THE COURT:  But at the -- most people, you're
7 saying, is the record clear on this that at least -- forget
8 when the recipient received it, when the speaker made the
9 statement, we will pay you if you sign this release, that
10 happened before the cash started coming in, and you think the
11 record on that is unambiguous?

12      MR. ESSER:  I think the record reflects that --
13 well, Ms. Stoutlander testified that the company decided to
14 preemptively make the payments, I believe that -- I don't
15 think Ms. Stoutlander actually said whether preemptively
16 meant before the petition date or before those Oracle notices
17 were actually sent.

18      THE COURT:  And then do I -- does the record give
19 me the precise timing here?

20      MR. ESSER:  I --

21      THE COURT:  I don't know that it -- I don't know
22 that anything turns on it, but it might, and I guess that's
23 what I want to understand.

24      MR. ESSER:  I think -- I think it does.  I think
25 the Oracle -- well, I think that's what I have --

1          THE COURT:  All right.  Look, I'll work --
2          MR. ESSER:  -- right now --
3          THE COURT:  -- I'll work my way --
4          MR. ESSER:  -- I would be happy to supplement --
5          THE COURT:  -- I'll work my way through the
6 record, no worries.  That's me taking credit for the work
7 that will actually be done by other people, which is --
8      (Laughter)
9          MR. ESSER:  Your Honor, we appreciate your time,
10 it's a large record, and I would just finish with my comment
11 that, you know, we do believe that if the WARN defenses don't
12 apply here, then they're -- they don't serve a purpose.
13          THE COURT:  Okay, very well.
14          MR. ESSER:  Thank you very much.
15          THE COURT:  Thank you.  You know what, Mr. Esser,
16 while you're here, can we talk -- let's talk about timing and
17 dates and how we're going to proceed.  And I know there are
18 letters on this and if people -- if anyone wants to say I
19 want more time to talk about this, I'll give you the chance
20 to tell me that, but as of now, if you can just walk me
21 through I so understand it, what is on the calendar in this
22 matter and in the case more broadly, if you can do that?  And
23 if you need help from your colleagues, that's okay.  And
24 which of these dates that I'm holding for you do we expect to
25 need --