**EXHIBIT B**

**Liquidation Analysis**

**Yellow Corporation**

**Liquidation Analysis**

**1.     Introduction**

Yellow Corporation and its debtor affiliates (the "Debtors"), with the assistance of their advisors, have prepared this hypothetical liquidation analysis (this "Liquidation Analysis") in connection with the *Second Amended Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 4975] (as amended, supplemented, or modified from time to time, the "Disclosure Statement").[1] This Liquidation Analysis indicates the estimated recoveries that may be obtained by Holders of Claims and Interests in a hypothetical liquidation pursuant to chapter 7 of the Bankruptcy Code.

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the Bankruptcy Court find, as a condition to confirmation of the Plan, that each Holder of a Claim or Interest in each Impaired Class: (a) has accepted the Plan; or (b) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. To demonstrate compliance with section 1129(a)(7), this Liquidation Analysis: (i) estimates the cash proceeds (the "Liquidation Proceeds") that a chapter 7 trustee (the "Trustee") would generate if each of the Chapter 11 Cases were converted to a chapter 7 case on the Effective Date and the assets of each Debtor's Estate were liquidated; (ii) estimates the distribution (the "Liquidation Distribution") that each Holder of a Claim or Interest would receive from the Liquidation Proceeds under the priority scheme dictated in chapter 7; and (iii) compares each Holder's Liquidation Distribution to the distribution under the Plan that such Holder is projected to receive if the Plan were confirmed and consummated.

Based on the following Liquidation Analysis, the Debtors, with the assistance of their advisors, believe the Plan satisfies the best interests test and that each Holder of an Impaired Claim or Interest will receive value under the Plan on the Effective Date that is not less than the value such Holder would receive if the Debtors liquidated under chapter 7 of the Bankruptcy Code or such Holder has otherwise committed to accept the Plan. The Debtors believe that this Liquidation Analysis and the conclusions set forth herein are fair and represent the Debtors' best judgment regarding the results of a liquidation of the Debtors under chapter 7 of the Bankruptcy Code. This Liquidation Analysis was prepared for the sole purpose of assisting the Bankruptcy Court and Holders of Impaired Claims or Interests in making this determination and should not be used for any other purpose. Accordingly, asset values and claim amounts included herein may be different than amounts referred to in the Plan. The Liquidation Analysis is based upon certain assumptions discussed herein.

---

[1]    Unless otherwise expressly set forth herein, capitalized terms used but not otherwise defined herein have the same meanings ascribed to such terms in the Disclosure Statement or the *Second Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 4974] (as amended, supplemented, or modified from time to time, the "Plan"), as applicable.

**2.      Basis of Presentation**

This Liquidation Analysis has been prepared assuming that the Debtors would convert their cases from chapter 11 cases to chapter 7 cases on the Effective Date which would be expected to occur in February 2025 (the "Conversion Date") and would be liquidated thereafter pursuant to chapter 7 of the Bankruptcy Code. This Liquidation Analysis was prepared on a legal entity basis, although certain summary tables herein present consolidated results. The pro forma distributable values referenced herein are projected to be as of February 28, 2025, and those values are assumed to be representative of the Debtors' assets as of the Conversion Date.

This Liquidation Analysis represents an estimate of recovery values and percentages based upon a hypothetical liquidation of the Debtors pursuant to chapter 7 of the Bankruptcy Code. It is assumed that, on the Conversion Date, the Bankruptcy Court would appoint a Trustee who would wind down any remaining assets and distribute the Cash proceeds, net of liquidation-related costs, to Holders of Claims and Interests in accordance with the priority scheme set forth in chapter 7.

The determination of the hypothetical proceeds from the liquidation of assets is a highly uncertain process involving the extensive use of estimates and assumptions which, although considered reasonable by the Debtors' management and the Debtors' advisors, are inherently subject to significant business, economic, litigation, and market uncertainties and contingencies beyond the Debtors' control.

In preparing this Liquidation Analysis, the Debtors have estimated an amount of Allowed Claims for each Class of Claimants at each legal entity based upon a review of the Debtors' books and records and Claims Filed in the Chapter 11 Cases (including modifications resulting from the Debtors reconciliation of Filed Claims).[2] Allowed Claims for purposes of the Liquidation Analysis are assumed to be materially consistent with the estimates under the Plan as laid out in the Disclosure Statement; however, actual Allowed Claims in a liquidation may be materially higher as a Trustee may not prosecute claim defenses as vehemently as the Debtors in the chapter 11 cases and there may be additional claims asserted in a chapter 7, which would further diminish recoveries in a liquidation. The ultimate Allowed value of Claims, including at which entity the Claim is ultimately Allowed, may vary materially from the assumptions herein. Further, the Administrative Bar Date has not yet been set, and certain additional contract rejection Claims may be Filed upon the rejection of additional contracts, which could create further variances versus the assumptions herein.

Professional fees, trustee fees, administrative expenses, priority claims, and any other claims that may arise in a liquidation scenario must be fully paid from an entity's liquidation proceeds before any funds are distributed to holders of general unsecured claims for that entity. Under the priority scheme dictated in chapter 7, no junior creditor can receive any distributions until all senior creditors are paid in full at a given entity, and no equity holder would receive any distribution until all creditors are paid in full. The assumed distributions to the Debtors' creditors

---

[2] As of the date hereof, the Administrative Bar Date for the filing of proofs of administrative and priority claims has not yet been established by the Bankruptcy Court.

as reflected in this Liquidation Analysis are estimated in accordance with the priority scheme dictated in chapter 7.

3. **Liquidation Process**

The Debtors are currently engaged in a marketing process for all remaining real property belonging to their Estates and are actively working to monetize the other remaining assets of the Estates. While the Debtors' current timeline allows for the closure of some sales prior to the anticipated Confirmation Hearing, a majority of sales are expected to close between the Confirmation Hearing and the Effective Date, with the expectation that some assets may remain to be monetized post-Effective Date. If the Debtors' cases were to convert to a chapter 7 proceeding, the Debtors believe there may be a substantial cooling effect on the ongoing monetization processes, thereby dampening and delaying asset recoveries compared with the Plan.

Any remaining assets at the time of the Conversion Date would be managed by a Trustee who would develop a liquidation plan to maximize proceeds from the sale of remaining assets for distribution to creditors.

The Liquidation Analysis assumes that the Debtors would be liquidated in a jointly administered, but not substantively consolidated, proceeding. Therefore, the Liquidation Analysis considers an entity-by-entity liquidation. The Liquidation Analysis takes into account post-petition administrative priority Claims against any of the Debtors held by another Debtor Affiliate (the "Postpetition Intercompany Claims"), unsecured prepetition Claims against any of the Debtors held by another Debtor Affiliate (the "Prepetition Intercompany Claims" and together with the Postpetition Intercompany Claims, the "Intercompany Claims"), and the equity interests of each parent–subsidiary relationship. In an iterative and sequential fashion, the Liquidation Analysis assumes that liquidation value is cycled among the Entities to satisfy post- and pre-petition Intercompany Claims on a *pari passu* basis with other Administrative and General Unsecured Claims, respectively, which in turn adds to the liquidation value available to satisfy third-party Claims at each entity.[3]

4. **Conclusion**

> **THE DEBTORS HAVE DETERMINED, AS SUMMARIZED IN THE FOLLOWING CHARTS, THAT CONFIRMATION OF THE PLAN WILL PROVIDE ALL HOLDERS OF IMPAIRED CLAIMS AND INTERESTS WITH A RECOVERY (IF ANY) THAT IS NOT LESS THAN WHAT THEY WOULD OTHERWISE RECEIVE IN CONNECTION WITH A LIQUIDATION OF THE DEBTORS UNDER CHAPTER 7 OF THE BANKRUPTCY CODE.**

---

[3] The value from liquidating the assets of each entity net of the costs of liquidation is used to pay out Postpetition Intercompany Claims resulting in an increase in value for those entities in a net receivable position and a decrease in value for those entities in a net payable position. The resulting value (if any) is used to pay other Administrative and Priority Claims. The residual value is allocated among the various unsecured Claims, including Prepetition Intercompany Claims. Value flows again to those entities in a net receivable position from those entities in a net payable position which results in more value to distribute among the entities other unsecured Claims.

The tables below summarize the Liquidation Analysis on an individual entity basis and consolidated across the Debtors, respectively, assuming no subordination of MEPP withdrawal liability Claims, presenting both high Liquidation Proceeds with low Claim values and low Liquidation Proceeds with high Claim values.  This Liquidation Analysis should be reviewed with the accompanying notes provided herein.

| No Subordination | | Amended Plan of Liquidation | | Hypothetical Chapter 7 Liquidation | |
|---|---|---|---|---|---|
| Class | Claim/Interest | Low % | High % | Low % | High % |
| 1 | Secured Tax Claims | 100.0% | 100.0% | 100.0% | 100.0% |
| 2 | Other Secured Claims | 100.0% | 100.0% | 100.0% | 100.0% |
| 3 | Other Priority Claims | 100.0% | 100.0% | 6.6% | 100.0% |
| 4A | Employee Claims | 100.0% | 100.0% | N/A | N/A |
| 4B | Convenience Class Claims | 100.0% | 100.0% | N/A | N/A |
| 5 | General Unsecured Claims by Legal Entity | | | | |
|  | 1105481 Ontario Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
|  | Express Lane Service, Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
|  | New Penn Motor Express LLC | 0.4% | 1.3% | 0.3% | 1.2% |
|  | Roadway Express International, Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
|  | Roadway LLC | 0.8% | 5.6% | 0.5% | 4.9% |
|  | Roadway Next Day Corporation | 0.0% | 0.0% | 0.0% | 0.0% |
|  | USF Bestway Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
|  | USF Dugan Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
|  | USF Holland International Sales Corporation | 0.0% | 0.0% | 0.0% | 0.0% |
|  | USF Holland LLC | 0.0% | 2.1% | 0.0% | 2.0% |
|  | USF Reddaway Inc. | 0.6% | 2.7% | 0.4% | 2.5% |
|  | USF Redstar LLC | 0.0% | 0.0% | 0.0% | 0.0% |
|  | Yellow Corporation | 0.0% | 0.0% | 0.0% | 0.0% |
|  | Yellow Freight Corporation | 0.0% | 0.0% | 0.0% | 0.0% |
|  | Yellow Logistics, Inc. | 0.0% | 0.1% | 0.0% | 0.1% |
|  | YRC Association Solutions, Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
|  | YRC Enterprise Services, Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
|  | YRC Freight Canada Company | 0.1% | 0.5% | 0.0% | 0.4% |
|  | YRC Inc. | 6.3% | 24.2% | 3.7% | 21.2% |
|  | YRC International Investments, Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
|  | YRC Logistics Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
|  | YRC Logistics Services, Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
|  | YRC Mortgages, LLC | 0.0% | 0.0% | 0.0% | 0.0% |
|  | YRC Regional Transportation, Inc. | 0.1% | 0.1% | 0.0% | 0.1% |
| 6 | Intercompany Claims | N/A | N/A | N/A | N/A |
| 7 | Intercompany Interests | N/A | N/A | N/A | N/A |
| 8 | Interests in Yellow Corporation | 0.0% | 0.0% | 0.0% | 0.0% |
| 9 | Section 510(b) Claims | N/A | N/A | N/A | N/A |

## Chapter 7 Claim & Recoveries with No Subordination

*($ in Millions)*

### Chapter 7 Gross Liquidation Proceeds

| | Notes | Recovery Estimate ($) Low | Recovery Estimate ($) High |
|---|---|---:|---:|
| Liquidation Proceeds: | | | |
| Projected Cash on Balance Sheet | [1] | $ 240 | $ 273 |
| Est. Sale Proceeds Pre-Confirmation | [2] | 190 | 380 |
| Est. Sale Proceeds Post-Confirmation | [2] | 95 | 246 |
| **Estimated Gross Proceeds** | | **$ 525** | **$ 900** |

| | | % of Gross Proceeds (%) Low | % of Gross Proceeds (%) High | Expense Estimate ($) Low | Expense Estimate ($) High |
|---|---|---:|---:|---:|---:|
| Less: Wind Down Costs | | | | | |
| Chapter 7 Professional Fees | [3] | -3.0% | -1.5% | (16) | (14) |
| Chapter 7 Trustee Fees | [4] | -3.0% | -3.0% | (16) | (27) |
| **Total Estimated Wind Down Costs** | | **-6.0%** | **-4.5%** | **$ (32)** | **$ (41)** |
| **Estimated Net Proceeds** | | | | **$ 494** | **$ 860** |

### Distribution of Net Proceeds to Creditors

| | | Claim Scenario High | Claim Scenario Low | Recovery % High Claim, Low Value | Recovery % Low Claim, High Value | Recoveries High Claim, Low Value | Recoveries Low Claim, High Value |
|---|---|---:|---:|---:|---:|---:|---:|
| **Admin & Priority Claims** | [5] | | | | | | |
| Admin Claims | | $ 5 | $ 3 | 89.5% | 92.7% | $ 4 | $ 3 |
| Priority Claims | | 285 | 135 | 93.7% | 97.6% | 267 | 132 |
| **Total Admin & Priority Recoveries** | | **$ 290** | **$ 138** | **93.6%** | **97.5%** | **$ 271** | **$ 135** |
| **Proceeds Available to General Unsecured Claims** | | | | | | **$ 222** | **$ 724** |
| **General Unsecured Claims** | [6] | | | | | | |
| Joint and Several Claims | | $ 4,206 | $ 2,177 | 5.0% | 32.3% | $ 212 | $ 703 |
| Other Unsecured Claims | | 543 | 197 | 1.9% | 10.9% | 10 | 21 |
| **Total General Unsecured Recoveries**[4] | | **$ 4,749** | **$ 2,374** | **4.7%** | **30.5%** | **$ 222** | **$ 724** |
| **Remaining Proceeds Available** | | | | | | **$ -** | **$ -** |

---

[4] The recoveries presented herein reflect a blended total across all entities involved. This approach aggregates the recovery rates to provide a comprehensive overview, rather than delineating individual recoveries by each entity. Such blending is intended to simplify the analysis while capturing the overall recovery potential for unsecured creditors across the entire estate. Refer to the prior page for estimated recoveries by Debtor entity.

5

The tables below summarize the Liquidation Analysis on an individual entity basis and consolidated across the Debtors, respectively, assuming 50% of MEPP withdrawal liability Claims are subordinated, presenting both high Liquidation Proceeds with low Claim values and low Liquidation Proceeds with high Claim values. This Liquidation Analysis should be reviewed with the accompanying notes provided herein.

| MEPP Fund Withdrawal 50% Subordination | | Amended Plan of Liquidation | | Hypothetical Chapter 7 Liquidation | |
|---|---|---|---|---|---|
| Class | Claim/Interest | Low % | High % | Low % | High % |
| 1 | Secured Tax Claims | 100.0% | 100.0% | 100.0% | 100.0% |
| 2 | Other Secured Claims | 100.0% | 100.0% | 100.0% | 100.0% |
| 3 | Other Priority Claims | 100.0% | 100.0% | 7.9% | 100.0% |
| 4A | Employee Claims | 100.0% | 100.0% | N/A | N/A |
| 4B | Convenience Class Claims | 100.0% | 100.0% | N/A | N/A |
| 5 | General Unsecured Claims by Legal Entity | | | | |
| | 1105481 Ontario Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
| | Express Lane Service, Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
| | New Penn Motor Express LLC | 0.7% | 2.3% | 0.6% | 2.1% |
| | Roadway Express International, Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
| | Roadway LLC | 2.5% | 15.6% | 1.5% | 13.6% |
| | Roadway Next Day Corporation | 0.0% | 0.0% | 0.0% | 0.0% |
| | USF Bestway Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
| | USF Dugan Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
| | USF Holland International Sales Corporation | 0.0% | 0.0% | 0.0% | 0.0% |
| | USF Holland LLC | 0.0% | 4.2% | 0.0% | 3.8% |
| | USF Reddaway Inc. | 1.1% | 5.1% | 0.7% | 4.6% |
| | USF Redstar LLC | 0.0% | 0.0% | 0.0% | 0.0% |
| | Yellow Corporation | 0.0% | 0.0% | 0.0% | 0.0% |
| | Yellow Freight Corporation | 0.0% | 0.0% | 0.0% | 0.0% |
| | Yellow Logistics, Inc. | 0.1% | 0.2% | 0.1% | 0.2% |
| | YRC Association Solutions, Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
| | YRC Enterprise Services, Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
| | YRC Freight Canada Company | 0.2% | 0.9% | 0.1% | 0.8% |
| | YRC Inc. | 10.7% | 38.3% | 6.3% | 33.3% |
| | YRC International Investments, Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
| | YRC Logistics Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
| | YRC Logistics Services, Inc. | 0.0% | 0.0% | 0.0% | 0.0% |
| | YRC Mortgages, LLC | 0.0% | 0.0% | 0.0% | 0.0% |
| | YRC Regional Transportation, Inc. | 0.1% | 0.2% | 0.1% | 0.2% |
| 6 | Intercompany Claims | N/A | N/A | N/A | N/A |
| 7 | Intercompany Interests | N/A | N/A | N/A | N/A |
| 8 | Interests in Yellow Corporation | 0.0% | 0.0% | 0.0% | 0.0% |
| 9 | Section 510(b) Claims | N/A | N/A | N/A | N/A |
| N/A | Subordinated Withdrawal Liability Claims | 0.0% | 0.0% | 0.0% | 0.0% |

### Chapter 7 Claim & Recoveries with MEPP Fund Withdrawal 50% Subordination

*($ in Millions)*

#### Chapter 7 Gross Liquidation Proceeds

| | Notes | | | Recovery Estimate ($) Low | Recovery Estimate ($) High |
|---|---|---|---|---|---|
| Liquidation Proceeds: | | | | | |
| Projected Cash on Balance Sheet | [1] | | | $ 240 | $ 273 |
| Est. Sale Proceeds Pre-Confirmation | [2] | | | 190 | 380 |
| Est. Sale Proceeds Post-Confirmation | [2] | | | 95 | 246 |
| **Estimated Gross Proceeds** | | | | **$ 525** | **$ 900** |

| | | % of Gross Proceeds (%) Low | % of Gross Proceeds (%) High | Expense Estimate ($) Low | Expense Estimate ($) High |
|---|---|---|---|---|---|
| Less: Wind Down Costs | | | | | |
| Chapter 7 Professional Fees | [3] | -3.0% | -1.5% | (16) | (14) |
| Chapter 7 Trustee Fees | [4] | -3.0% | -3.0% | (16) | (27) |
| **Total Estimated Wind Down Costs** | | **-6.0%** | **-4.5%** | **$ (32)** | **$ (41)** |
| **Estimated Net Proceeds** | | | | **$ 494** | **$ 860** |

#### Distribution of Net Proceeds to Creditors

| | | Claim Scenario High | Claim Scenario Low | Recovery % High Claim, Low Value | Recovery % Low Claim, High Value | Recoveries High Claim, Low Value | Recoveries Low Claim, High Value |
|---|---|---|---|---|---|---|---|
| **Admin & Priority Claims** | [5] | | | | | | |
| Admin Claims | | $ 5 | $ 3 | 89.5% | 92.7% | $ 4 | $ 3 |
| Priority Claims | | 285 | 135 | 93.8% | 97.8% | 267 | 132 |
| **Total Admin & Priority Recoveries** | | **$ 290** | **$ 138** | **93.7%** | **97.7%** | **$ 272** | **$ 135** |
| **Proceeds Available to General Unsecured Claims** | | | | | | **$ 222** | **$ 724** |
| **General Unsecured Claims** | [6] | | | | | | |
| Joint and Several Claims | | $ 2,206 | $ 1,177 | 9.3% | 58.6% | $ 205 | $ 690 |
| Other Unsecured Claims | | 543 | 197 | 3.1% | 17.3% | 17 | 34 |
| **Total General Unsecured Recoveries**[5] | | **$ 2,749** | **$ 1,374** | **8.1%** | **52.7%** | **$ 222** | **$ 724** |
| **Remaining Proceeds Available for Subordinated Claims** | | | | | | **$ -** | **$ -** |
| **Total Subordinated Claims Recoveries** | | **$ 2,000** | **$ 1,000** | **0.0%** | **0.0%** | **$ -** | **$ -** |
| **Remaining Proceeds Available** | | | | | | **$ -** | **$ -** |

---

[5] The recoveries presented herein reflect a blended total across all entities involved. This approach aggregates the recovery rates to provide a comprehensive overview, rather than delineating individual recoveries by each entity. Such blending is intended to simplify the analysis while capturing the overall recovery potential for unsecured creditors across the entire estate. Refer to the prior page for estimated recoveries by Debtor entity.

**Notes and Assumptions to Liquidation Analysis**

*Proceeds:*

1. <u>Cash:</u>

    a. The forecast includes projected cash as of the Conversion Date after accounting for 1) winddown and monetization of the Debtors' AR portfolio, 2) completion of the ongoing rolling stock monetization process pursuant to the Agency Agreement [Docket Nos. 981, 1186, and 2489], and 3) funding of the ongoing winddown effort.

    b. Balance sheet cash is estimated at $240 million to $273 million in the low and high scenarios, respectively.

2. <u>Remaining Sale Proceeds:</u>

    a. Based on preliminary indications from the Debtors ongoing marketing process, total net proceeds on account of the Debtors remaining real property (47 owned properties and 62 leased properties) are estimated at approximately $425 million to over $700 million if the current value maximizing marketing process in a chapter 11 liquidation continues. In the assumed hypothetical chapter 7 liquidation, the Debtors assume that a Trustee would be likely to pause any transactions, some market participants may withdraw from the process, unwilling to fully engage in an auction process with the uncertainties inherent in a chapter 7 bankruptcy, and the values received for remaining properties will be negatively impacted from the delay and loss of continuity. Further, a Trustee may elect to cease any further rent payments on the Debtors lease portfolio, jeopardizing the Debtors' ability to assign valuable leases. Accordingly, the Debtors estimate that the value of the real property may decrease significantly, to $285 million to $627 million.

    b. All sale proceeds from transactions closing before confirmation are considered to be unaffected by a hypothetical chapter 7 liquidation, varying only due to uncertainty surrounding market value (in a chapter 7 or 11 liquidation). In contrast, sales closing after confirmation carries significant uncertainty due to the possibility of disruptions in the sales process.

3. <u>Chapter 7 Professional Fees</u>

    a. Consists of chapter 7 professional fees associated with professionals involved in the wind-down of the Estates, investigation and litigation matters, and a provision for contingencies. The Liquidation Analysis assumes additional wind-down costs not included in the Plan, including higher professional fees than those assumed as part of the Plan due to some additional work that would be required and inherent inefficiencies resulting from the loss of institutional knowledge possessed by the current estate employees and professionals. Incremental professional fees are calculated at 1.5% to 3.0% of total net proceeds.

4. Chapter 7 Trustee Fees

   a. Chapter 7 Trustee fees are dictated by the fee guidelines of section 326(a) of the Bankruptcy Code. This Liquidation Analysis assumes Trustee fees are 3.0% of each Debtor's Gross Liquidation Proceeds available for distribution to creditors.

*Claims:*

**General Note: The Claims included herein are estimates and represent a range of potential outcomes. The ultimate Allowed value of Claims, and the Debtor against which they are asserted, may vary significantly from what is estimated herein. The Debtors continue to litigate and reconcile Claims, and the ranges listed below or the inclusion of a particular type of Claim should not be construed as an admission of liability or estimation of the Debtors views as to the value of said Claim(s).**

5. Administrative & Priority Claims

   **Summary of Administrative & Priority Claims**

   | ($ in Millions) | Low | High |
   |---|---:|---:|
   | **Administrative & Priority Claims:** | | |
   | Administrative Claims | $ 3 | $ 5 |
   | Priority Claims | 135 | 285 |
   | Subtotal - Total Admin & Priority | 138 | 290 |
   | Postpetition Admin Intercompany Claims | 2,139 | 2,139 |
   | **Total** | **$ 2,277** | **$ 2,429** |

   a. Administrative Claims are projected to be between $3 million and $5 million from 503(b)(9) Claims per the Debtors books and records and review of Filed Claims. Administrative Claims arising from ordinary course post-petition accounts payable are assumed to be paid immediately prior to a Conversion and netted out of the projected cash balance. Chapter 11 professional fee costs are being reserved for weekly and not included in the projected cash balance.

   b. Postpetition Intercompany Claims, as defined in the Debtors' cash management motion [Docket No. 10], are included in Administrative and Priority Claims and are asserted on a *pari passu* basis with the third-party Claims described above. Any recoveries on account of Postpetition Intercompany Claims result in the transfer of value between Debtors.

   c. Priority Claims consist of the following:

      i. Claims arising under the WARN Act are estimated between $0 and $207 million. The upper end of this range includes the estimated priority portion of wages and benefits, as well as pension contributions that would have been received during the WARN notification period. The low end of the range factors in the objection to all WARN claims as outlined in the

9

    WARN-Related Matters section of the First Amended Disclosure Statement [Docket No. 4581], which is seeking to determine the Company has no WARN related liability. *See* Article VII.H.6 of the Disclosure Statement for a further discussion regarding the WARN claims.

  ii. Estimated Claims for accrued vacation and PTO ($40 million in both high and low scenarios). This estimate includes the priority portion of unpaid vacation and PTO that had accrued as of the Petition Date.

  iii. Claims arising from accrued employee sick pay, ranging from $6 million to $21 million. The high end of this estimate is based on Disputed Claims that have yet to be resolved.

  iv. Other priority employee Claims are estimated to range between $1 million and $3 million. The lower estimate represents claims for severance pay continuation and other priority obligations, while the higher estimate encompasses all Filed Claims, including certain unliquidated Claims.

  v. The estimated range for Priority Tax Claims is between $4 million and $14 million. A significant portion of the higher estimate relates to ongoing audits in various states, in addition to a cushion for any remaining unreconciled and unliquidated claims.

  vi. The estimates for unpaid contributions to prepetition Multiemployer Pension Plan ("MEPP") and Health & Welfare ("H&W") range from $0 to $85 million in the high and low estimates, respectively. The lower amount reflects that if the WARN claims are Allowed, the priority cap would be used up and these Claims would become unsecured.

6. General Unsecured Claims

**Summary of General Unsecured Claims**

| ($ in Millions) | Low | High |
|---|---|---|
| **General Unsecured Claims:** | | |
| Joint & Several Unsecured Claims | $ 2,177 | $ 4,206 |
| Other General Unsecured Claims | 197 | 543 |
| Subtotal - General Unsecured Claims | 2,374 | 4,749 |
| Prepetition Unsecured Intercompany Claims | 4,778 | 4,778 |
| **Total** | **$ 7,152** | **$ 9,527** |

  a. The Liquidation Analysis assumes that the following Claims are asserted against all of the Debtors on a joint and several basis, resulting in an enhanced recovery in the aggregate compared with other General Unsecured Claims only asserted against a single Debtor entity:

      i. The estimated Claims for withdrawal liabilities related to MEPPs range from $2.0 billion to $4.0 billion. This estimate is based on the Court's amended summary judgment ruling. *See* Article VII.H.2-5 of the Disclosure Statement for further discussion. The ultimate amount of Allowed Claims is subject to uncertainty and could be higher or lower than this range. It is unresolved whether a portion of these Claims may be subject to subordination.

     ii. The estimated range for Claims arising from the termination of pension plans and related issues by the PBGC, totaling $177 million to $206 million. The higher estimate reflects claims asserted by the PBGC, while the lower estimate represents the Debtors' actuarial projections based on the plan merger and subsequent termination effective May 1, 2024. *See* Article VII.H.1 of the Disclosure Statement for further discussion.

b. Further, the Liquidation Analysis also includes various types of General Unsecured Claims Filed against a single Debtor entity. These categories consist of vendor, customer, contract rejection, non-priority employee, non-priority tax, and litigation Claims. The estimated total for these General Unsecured Claims ranges from $197 million to $543 million.

c. Prepetition Intercompany Claims, generated from intercompany activity occurring prior to the Debtors' chapter 11 filings, are asserted as unsecured Claims on a *pari passu* basis with the third-party Claims described above. Any recoveries on account of Prepetition Intercompany Claims result in the transfer of value between Debtors.